UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GOVERNMENT       EMPLOYEES       INSURANCE
COMPANY,   GEICO   INDEMNITY   COMPANY,
GEICO GENERAL INSURANCE  COMPANY and
GEICO CASUALTY COMPANY,                                            Docket No.: 1:20-cv-05786-PKC-SJB

                          Plaintiffs,

               -against-

BIG  APPLE  MED  EQUIPMENT,  INC.,  DAVID
ABAYEV,     ALEKSANDR  MOSTOVOY,     D.C.,
SURESH  PAULUS,  D.O.,  ASHLEY  KIAEI,  D.C.,
PETER  MARGULIES,  D.C.,  and  JOHN  DOE
DEFENDANTS 1-10,

                          Defendants.
-------------------------------------------------------------------X

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TEMPORARILY STAY COLLECTION ARBITRATIONS AND ENJOIN COLLECTION ACTIONS

RIVKIN RADLER LLP
Barry Levy, Esq.
Michael A. Sirignano, Esq.
Michael Vanunu, Esq.
Philip Nash, Esq.
926 RXR Plaza
Uniondale, New York 11556-0926
RR File:  5100-2060
Telephone:     (516) 357-3000
Facsimile:     (516) 357-3333

*Counsel for Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company and GEICO Casualty Company*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT .................................................................................................... 1

AN OVERVIEW OF NEW YORK'S NO-FAULT LAWS ..................................................... 3

STATEMENT OF RELEVANT FACTS .................................................................................. 5

I.      GEICO's Complaint and the Allegations against the Defendants ...................................... 5

II.     The Underlying No-Fault Arbitrations ............................................................................... 8

III.    Big Apple's Present Business Activities.............................................................................. 9

ARGUMENT .............................................................................................................................. 10

I.      The Court Should Grant GEICO's Request for an Order Staying All Pending Arbitrations
Filed Against GEICO ............................................................................................................ 10

        A.      The Standard on a Motion for a Stay ................................................................. 10

        B.      Absent the Requested Stay, GEICO Will Suffer Irreparable Harm..................... 11

        C.      GEICO Has Shown – at a Minimum – a Serious Question Going to the Merits of
                its Declaratory Judgment Claim........................................................................... 16

                1.      Prescriptions Pursuant to Predetermined Fraudulent Protocols............... 18

                2.      The Payment of Illegal Kickbacks ........................................................... 19

                3.      The Billing for DME Not Provided .......................................................... 20

        D.      The Balance of Hardships Tips in Favor of a Stay .............................................. 21

II.     The Court Should Enjoin Big Apple from Commencing any New No-Fault Collections
Proceedings During the Pendency of this Action .................................................................. 23

III.    GEICO Should Not be Required to Post Security for the Requested Injunction.............. 24

CONCLUSION............................................................................................................................ 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Allstate Ins. Co. v. Hisham Elzanaty, 929 F. Supp. 2d 199, 217 (E.D.N.Y. 2013) .............. passim

Allstate Ins. Co. v. Mun. 751 F.3d 94, 99 (2d Cir. 2014) ........................................................ 8, 14

Almontaser v. N.Y. Dep't of Educ., 519 F.3d 505, 508 (2d Cir. 2008) ........................................ 10

Asset Allocation & Mgmt. Co. v. W. Employers Ins. Co., 892 F.2d 566, 572 (7th Cir. 1989) ... 23

Autoone Ins. Co. v. Manhattan Heights Med., P.C., 2009 N.Y. Misc. LEXIS 2003 at * 7 (Sup. Ct. Queens Cty. July 31, 2009) ................................................................................................ 21

Computer Assocs. Int'l, Inc. v. Altai, Inc., 893 F.2d 26, 29 (2d Cir. 1990) .................................. 23

Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc., 233 F.3d 697, 704 (2d Cir. 2000) .......... 23

Donohue v. Mangano, 886 F. Supp. 2d 126, 163 (E.D.N.Y. 2012) .............................................. 24

GEICO Ins. Co. v Williams, 2011 N.Y. Misc. LEXIS 305 at * 7 (Sup. Ct. Nassau Cty. February 1, 2011) ..................................................................................................................................... 13

Gov't Emps. Ins. Co. v. Cean, 2019 U.S. Dist. LEXIS 203298 (E.D.N.Y. November 22, 2019)....
.......................................................................................................................... 11, 12, 22

Gov't Emps. Ins. Co. v. Strut, 2020 U.S. Dist. LEXIS 63396 (W.D.N.Y. April 10, 2020) ......... 10

Gov't Emps. Ins. Co. v. Axial Chiro No. 1:19-cv-05570-ENV-SMG, Docket No. 56 (E.D.N.Y. April 27, 2020) ........................................................................................................... 17, 22, 24

Gov't Emps. Ins. Co. v. Badia, 2015 U.S. Dist. LEXIS 33667 at *9 (E.D.N.Y. March 18, 2015). 4

Gov't Emps. Ins. Co. v. Mayzenberg, 2018 U.S. Dist. LEXIS 195890, at *22 (E.D.N.Y. Nov. 16, 2018) .................................................................................................................................. passim

Gov't Emps. Ins. Co. v. Moshe, 2020 U.S. Dist. LEXIS 114100 (E.D.N.Y. June 29, 2020) passim

Gov't Emps. Ins. Co. v. Strutsovskiy, 2017 U.S. Dist. LEXIS 178514 (W.D.N.Y. October 26, 2017) ................................................................................................................................... passim

Gov't Emps. Ins. Co. v. Wellmart RX, Inc., 2020 U.S. Dist. LEXIS 7864 (E.D.N.Y. January 16, 2020) ............................................................................................................. 10, 15, 22, 24

Jones v. Ford Motor Credit Co., 358 F.3d 205, 210-13 (2d Cir. 2004) ........................................ 23

Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002) ........................................................ 11

Liberty Mut. Ins. Co. v. Excel Imaging, P.C., 879 F. Supp. 2d 243 (E.D.N.Y. 2012) ........... 11, 12

Matter of Medical Society of New York v. Serio, 100 N.Y.2d 854, 860-861 (2003) ....................... 4

Metro. Taxicab Bd. of Trade v. City of New York, 615 F.3d 152, 156 (2d Cir. 2010) ............... 10

Nat'l Equip. Rental, Ltd. v. Fowler, 287 F.2d 43, 45 (2d Cir. 1961); ......................................... 23

Omega Importing Corp. v. Petri-Kine Camera Co., 451 F.2d 1190, 1195 (2d Cir. 1971) ........... 15

Southern Constr. Co., Inc. v. Pickard, 371 U.S. 57, 60 (1962) .................................................... 23

St. Paul Travelers Ins. Co. v. Nandi, 2007 N.Y. Misc. LEXIS 4417 at * 22 (Sup. Ct. Queens Cty.
    May 25, 2007) ......................................................................................................................... 13

State Farm Mut. Auto. Ins. Co. v. Mallela, 4 N.Y.3d 313, 320 n.2 (2005) ...................................... 4

State Farm Mut. Auto. Ins. Co. v. Parisien, 352 F. Supp. 3d 215 (E.D.N.Y. 2018) ... 11, 12, 16, 22

WPIX, Inc. v. ivi, Inc., 691 F.3d 275, 286 (2d Cir. 2012) .......................................................... 15

**Statutes**

8 N.Y.C.R.R. § 29.1(b)(2) ........................................................................................................... 20

8 N.Y.C.R.R. § 29.1(3) .................................................................................................................. 4

11 N.Y.C.R.R. § 65 ....................................................................................................................... 3

11 N.Y.C.R.R. § 65-3.16(a)(12) ................................................................................................... 4

11 N.Y.C.R.R. § 65-3.9(a) ........................................................................................................... 22

11 N.Y.C.R.R. §§ 65-4.1 ......................................................................................................... 8, 14

Fed. R. Civ. P. 13(a) .................................................................................................................... 22

Fed. R. Civ. P. 65(c) .................................................................................................................... 24

N.Y. Educ. Law § 6509-a ............................................................................................................. 20

N.Y. Educ. Law § 6530(17) ...................................................................................................... 4, 20

N.Y. Educ. Law § 6530(18) ........................................................................................................... 4

N.Y. Ins. Law § 5101 ..................................................................................................................... 3

N.Y. Ins. Law §5106(b) ................................................................................................................. 8

## PRELIMINARY STATEMENT

Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company and GEICO Casualty Company (collectively, "GEICO" or "Plaintiffs") respectfully submit this memorandum of law in support of their motion against Defendants Big Apple Med Equipment, Inc. ("Big Apple") and David Abayev ("Abayev", collectively the "Big Apple Defendants") seeking an Order:

(i)     staying all pending No-Fault insurance collection arbitrations that have been commenced against GEICO by or on behalf of Big Apple pending disposition of GEICO's declaratory judgment claim in this action; and

(ii)    enjoining Big Apple and anyone acting on their behalf from commencing any further No-Fault insurance collection arbitration or litigation against GEICO pending disposition of GEICO's declaratory judgment claim in this action.

There is good cause for this motion. The Complaint alleges that the Big Apple Defendants' engaged in a multifaceted fraudulent scheme where they submitted thousands of fraudulent No-Fault insurance claims to GEICO seeking $1.6 million for durable medical equipment and orthotic devices (collectively "DME") provided to New York automobile accident victims covered by policies of insurance issued by GEICO ("Insureds"). The Big Apple Defendants' fraudulent scheme involved, among other things, dispensing medically unnecessary DME pursuant to unlawful financial arrangements and predetermined fraudulent protocols, and billing GEICO for DME they never provided. As a result of the Big Apple Defendants' fraudulent scheme against GEICO, GEICO voluntarily paid the Big Apple Defendants over $122,000.00 and have disputed paying over $887,000.00 in pending claims submitted by the Big Apple Defendants.

Based on the allegations in the Complaint, GEICO asserts claims against the Big Apple Defendants, Aleksandr Mostovoy, D.C. ("Mostovoy"), Suresh Paulus, D.O. ("Paulus"), Ashley Kiaei, D.C. ("Kiaei"), and Peter Margulies, D.C. ("Margulies")(collectively, without the Big Apple Defendants, the "Co-Defendants") for civil RICO violations under 18 U.S.C. § 1962(c) and

1

(d), common law fraud, unjust enrichment, and aiding and abetting fraud. In addition, GEICO seeks a declaratory judgment that it is not liable to pay any of the outstanding and unpaid billing that has been submitted through Big Apple because of the fraud alleged in the Complaint.

Even though GEICO set forth detailed facts to demonstrate that the Big Apple Defendants, together with their Co-Defendants, are engaged in fraudulent schemes and GEICO seeks a declaratory judgment to the effect that Big Apple may not recover any of their outstanding No-Fault insurance claims, the Big Apple Defendants are actively pursuing collection on the same outstanding and fraudulent billing. The Big Apple Defendants are aware that they have a better chance of concealing their scheme and recovering for the fraudulently provided DME when each bill is viewed separately. After GEICO denies or otherwise does not pay their bills, the Big Apple Defendants routinely demand "No-Fault" arbitration with the American Arbitration Association ("AAA"). As such, the Big Apple Defendants are currently pursuing collection of more than $887,000.00 from GEICO, spread across 774 separate No-Fault collection arbitrations pending before the AAA. However, all of the individual bills at issue in these underlying collection arbitrations are the subject of GEICO's declaratory judgment claim.

A stay of the pending arbitrations and enjoining the prosecution of arbitrations would promote the efficient progression of this matter. For example, the stay would promote judicial economy. Otherwise, the Parties would have to waste time and judicial resources addressing the same pending bills in multiple forums, with the possibility of inconsistent rulings. Additionally, a stay would remove the perverse incentive for the Big Apple Defendants to delay the progression of this matter in order to collect as much money as possible from GEICO via piecemeal arbitration.

Here, GEICO has demonstrated – at the very least – serious questions going to the merits of its declaratory judgment claim. In addition to all of the specific allegations identified in

GEICO's Complaint, GEICO has obtained the declaration of Dr. Robert Borzone who concluded, based upon his review of numerous patient records, that the DME billed to GEICO by Big Apple were not medically necessary and were provided as a result of predetermined protocols employed without regard for actual patient care.

GEICO would be irreparably harmed if the Big Apple Defendants were permitted to continue pursuing their collection arbitrations during the pendency of this action because – at a minimum – all of these arbitrations concern the very claims that are the subject of Plaintiffs' declaratory judgment claim and there is a high risk of inconsistent judgments with the pending declaratory judgment claim. Furthermore, Big Apple has not billed GEICO for services provided since December 2019, no longer conducts business, and is essentially judgment-proof. Presently, Big Apple's only business is bringing actions to collect on their unpaid bills to insurance companies. Moreover, the Big Apple Defendants will not suffer any hardship as the result of a stay of their collection activities during the pendency of this action.

As discussed in detail below, <u>numerous</u> federal and state courts – in highly analogous No-Fault insurance fraud cases, under virtually identical circumstances – have stayed pending No-Fault collections arbitrations and enjoined the commencement of new No-Fault collections arbitrations and litigations pending the disposition of a plaintiff-insurer's fraud-based and declaratory judgment claims.

Based on the foregoing, GEICO respectfully submits that – similar to the highly analogous No-Fault insurance fraud cases – a stay and injunction is warranted.

## <u>AN OVERVIEW OF NEW YORK'S NO-FAULT LAWS</u>

Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law §§ 5101, <u>et seq</u>.) and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. §§ 65, <u>et</u>

seq.) (collectively referred to as the "No-Fault Laws"), automobile insurers are required to provide Personal Injury Protection Benefits ("No-Fault Benefits") to Insureds.

The primary goal of the No-Fault Laws is "to ensure prompt compensation for losses incurred by accident victims without regard to fault" and the reality is "that insurers are given only 30 days to review and investigate claims before paying them without risk of penalties for denying or delaying a claim." Matter of Medical Society of New York v. Serio, 100 N.Y.2d 854, 860-861 (2003).

A healthcare service provider is not eligible to collect No-Fault Benefits if it is unlawfully incorporated or "fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York . . . ." 11 N.Y.C.R.R. § 65-3.16(a)(12). These eligibility requirements were promulgated "to combat rapidly growing incidences of fraud in the No-Fault regime." State Farm Mut. Auto. Ins. Co. v. Mallela, 4 N.Y.3d 313, 320 n.2 (2005). In particular, a healthcare service provider is not eligible to collect No-Fault Benefits if it, directly or indirectly, offers, gives, solicits, or receives any fee or other compensation in exchange for a patient referral. See N.Y. Educ. Law §§ 6509-a, 6530(18), 6531; 8 N.Y.C.R.R. § 29.1(b)(3); see also Gov't Emps. Ins. Co. v. Mayzenberg, 2018 U.S. Dist. LEXIS 195890, at *22 (E.D.N.Y. Nov. 16, 2018) ("If a medical professional corporation engages in this unprofessional conduct, it is rendered ineligible for a requested No-Fault reimbursement by virtue of 11 N.Y.C.R.R. § 65-3.16(a)(12)") (quoting Gov't Emps. Ins. Co. v. Badia, 2015 U.S. Dist. LEXIS 33667 at *9 (E.D.N.Y. March 18, 2015)). Prohibited kickbacks include more than a specific monetary amount, it includes "exercising undue influence on the patient, including the promotion of the sale of services, goods, appliances, or drugs in such manner as to exploit the patient for the financial gain of the licensee or of a third party". See N.Y. Educ. Law § 6530(17); 8 N.Y.C.R.R. § 29.1(b)(2).

To ensure that Insureds' $50,000.00 in maximum No-Fault Benefits are not artificially depleted by inflated charges for DME, the No-Fault Laws provide that healthcare providers can submit charges for DME up to the maximum amounts listed under the New York Medicaid Fee Schedule ("Fee Schedule"). The Fee Schedule sets forth  maximum reimbursement amounts based upon Healthcare Common Procedure Coding System ("HCPCS") Codes, which were set forth by the Center for Medicare & Medicaid Services ("CMS"). The HCPCS Codes and their definitions provide specific characteristics and requirements that an item or device must meet in order to qualify for reimbursement under each HCPCS Code.

## STATEMENT OF RELEVANT FACTS

### I.    GEICO's Complaint and the Allegations against the Defendants

GEICO commenced this action on November 30, 2020. See Docket No. 1. Plaintiffs respectfully refer the Court to the Complaint for the full contours of the Defendants' fraudulent scheme, as it is impossible to fully describe every aspect of the Defendants' multifaceted fraud in this memorandum of law. Briefly, however, and as alleged in the Complaint, the Big Apple Defendants submitted charges to GEICO for DME:

> (i)     purportedly provided to Insureds as a result of unlawful financial arrangements with healthcare providers, including the Co-Defendants, either directly or through third-parties who are not presently known (Docket No. 1, ¶¶ 66-90);

> (ii)    that was not medically necessary and was purportedly provided based upon predetermined fraudulent protocols designed to financially enrich the Defendants, other health care providers, and others not presently known (Docket No. 1, ¶¶ 91-211);

> (iii)   that was not provided to the Insureds (Docket No. 1, ¶¶ 212-224); and

> (iv)    using HCPCS Codes that fraudulently mispresented the type and nature of DME purportedly provided to the Insureds (Docket No. 1, ¶¶ 225-256).

As the Court shall note, these allegations are not pleaded in a conclusory vacuum. Rather, the allegations are supported by detailed and specific examples of the Big Apple Defendants'

fraudulent conduct, setting forth the "who, what, when, where, and why" of a large number of the Defendants' individual, fraudulent acts. Even more, the allegations in the Complaint related to lack of medical necessity and the predetermined fraudulent protocols are supported by the medical opinion of Robert Borzone, BA, DC, LAc, DACBN. <u>See</u> Declaration of Michael Vanunu ("Vanunu Decl."), Exhibit 3, Declaration of Dr. Robert Borzone ("Borzone Decl."), <u>passim</u>. By way of example:

(i)    Paragraphs 66-90 of the Complaint explains the unlawful financial arrangements between the Big Apple Defendants and healthcare providers, including the Co-Defendants, by paying illegal kickbacks through third-party entities, and includes specific examples of illegal kickbacks by identifying payments from Big Apple to third-party entities that serve no legitimate purpose.

(ii)    Paragraphs 91-118 of the Complaint explains the lack of medical necessity for the prescriptions issued by healthcare providers, including the Co-Defendants¸ and were provided pursuant to predetermined fraudulent protocols. <u>See</u> <u>also</u> Borzone Decl., <u>passim</u>.

(iii)    Paragraphs 119-135 of the Complaint described – as part of a predetermined fraudulent protocol – the specific pattern for issuing prescriptions by Mostovoy to virtually all Insureds who treated at a multi-disciplinary healthcare office located at Hempstead Avenue in Queens Village, New York. In addition, the Complaint included claim-specific examples of Insureds who were issued prescriptions for medically unnecessary DME that are consistent with the predetermined fraudulent protocol by Mostovoy. <u>See</u> <u>also</u> Borzone Decl., <u>passim</u>.

(iv)    Paragraphs 136-159 of the Complaint described – as part of a predetermined fraudulent protocol – the specific pattern for issuing prescriptions by Paulus to virtually all Insureds who treated at a multi-disciplinary healthcare office located at Jerome Avenue in Bronx, New York. In addition, the Complaint included claim-specific examples of Insureds who were issued prescriptions for medically unnecessary DME that are consistent with the predetermined fraudulent protocol by Paulus. <u>See</u> <u>also</u> Borzone Decl., <u>passim</u>.

(v)    Paragraphs 160-183 of the Complaint described – as part of a predetermined fraudulent protocol – the specific pattern for issuing prescriptions by Kiaei to virtually all Insureds who treated at a multi-disciplinary healthcare office located at Seneca Avenue in Ridgewood, New York. In addition, the Complaint included claim-specific examples of Insureds who were issued prescriptions for medically unnecessary DME that are consistent with the predetermined fraudulent protocol by Kiaei. <u>See</u> <u>also</u> Borzone Decl., <u>passim</u>.

(vi)     Paragraphs 184-211 of the Complaint described – as part of a predetermined fraudulent protocol – the specific pattern for issuing prescriptions by Margulies to virtually all Insureds who treated at a multi-disciplinary healthcare office located at Hempstead Turnpike in West Hempstead, New York. In addition, the Complaint included claim-specific examples of Insureds who were issued prescriptions for medically unnecessary DME that are consistent with the predetermined fraudulent protocol by Margulies. See also Borzone Decl., passim.

(vii)    Paragraphs 216-224 the Complaint details the Big Apple Defendants scheme to bill GEICO for DME never received by the Insureds and included specific examples of Insureds who never received the DME billed to GEICO by the Big Apple Defendants.

(viii)   Paragraphs 225-256 of the Complaint explain how the Big Apple Defendants billed GEICO using HCPCS Codes that represented the DME purportedly provided to Insureds when the Insureds never received those specific items. Instead, to the extent that any DME was provided to Insureds, the DME did not contain some or any of the unique specifications required by the HCPCS Codes billed to GEICO.

Throughout the course of this multifaceted fraudulent scheme, the Big Apple Defendants submitted fraudulent bills and prescriptions to GEICO for unlawful, medically-unnecessary, and otherwise non-reimbursable DME. See Docket No. 1, ¶¶ 257-258. The bills and treatment reports were false and misleading in the following, material respects:

(i)      The NF-3 forms, HCFA-1500 forms, and treatment reports uniformly misrepresented to GEICO that the Big Apple Defendants provided DME pursuant to prescriptions by licensed healthcare providers for reasonable and medically necessary DME, and therefore were eligible to receive No-Fault Benefits. In fact, the Big Apple Defendants were not entitled to receive No-Fault insurance benefits because, to the extent that the Big Apple Defendants provided any of DME, it was based upon: (a) unlawful financial arrangements with the healthcare providers, including the Co-Defendants, either directly or through third-parties who are presently unknown; and (b) predetermined fraudulent protocols without regard for the medical necessity of the items.

(ii)     The NF-3 forms, HCFA-1500 forms, and treatment reports uniformly misrepresented to GEICO that the Big Apple Defendants provided DME to Insureds, and therefore were eligible to receive no-fault benefits. In fact, the Big Apple Defendants were not entitled to receive no-fault benefits because the Big Apple Defendants did not provide the Insureds with the DME identified in the NF-3 forms, HCFA-1500 forms, and prescription forms.

(iii)    The NF-3 forms, HCFA-1500 forms, and treatment reports uniformly misrepresented to GEICO that the Big Apple Defendants provided DME that directly

corresponded to the HCPCS Codes contained within each form, and therefore were eligible to receive No-Fault Benefits. In fact, the Big Apple Defendants were not entitled to receive No-Fault Benefits because – to the extent that the Big Apple Defendants provided any DME to the Insureds – the Big Apple Equipment did not meet the specific requirements for the HCPCS Codes identified in the NF-3 forms, HCFA-1500 forms, and prescription forms.

See Docket No. 1, passim

Based on these allegations, GEICO asserts claims against the Big Apple Defendants and their Co-Defendants for civil RICO violations pursuant to 18 U.S.C. § 1962(c) and (d), common law fraud, and unjust enrichment. See Docket No. 1, ¶¶ 271-276. Through these claims, GEICO seeks to recover more than $122,000.00 it already paid in reliance on the fraudulent billing submitted by the Defendants. Further, GEICO asserts a declaratory judgment claim that Big Apple has no right to receive payment on their pending and unpaid No-Fault insurance billing.

## II.    The Underlying No-Fault Arbitrations

Under the No-Fault Laws, healthcare providers, including DME retailers like Big Apple, as assignees of persons injured in automobile accidents, may submit disputes over payment of bills to arbitration. See N.Y. Ins. Law §5106(b);11 N.Y.C.R.R. §§ 65-4.1, et seq. New York's arbitration process for No-Fault coverage is an expedited, simplified affair meant to work as quickly and efficiently as possible. Allstate Ins. Co. v. Mun. 751 F.3d 94, 99 (2d Cir. 2014). No-Fault arbitrators typically conduct one hearing after another, generally in 15-minute intervals. In the context of No-Fault arbitrations, "discovery is limited or non-existent and the insurance companies are essentially defenseless." Id. Complex fraud and RICO claims cannot be shoehorned into this system. Id; see also See Vanunu Decl., Exhibit 2, Declaration of Kathy Asmus ("Asmus Decl.") at ¶¶ 8-20.

Even as GEICO is prosecuting this action against the Defendants seeking – among other things – a declaratory judgment that Big Apple has no right to collect on any of their pending,

fraudulent No-Fault insurance charges, the Big Apple Defendants as part of their scheme are pursuing collection on those same fraudulent charges through a large number of individual No-Fault collections arbitrations.

The Big Apple Defendants – actively aware that their fraudulent scheme to bill for DME that is medically unnecessary, illusory, or otherwise unreimbursable is not evident from a review of a single bill – know that it is in their benefit to actively pursue collection on the individual bills at issue in this case through arbitration because the expedited arbitration proceedings do not provide the time or resources to address the complex fraud issues presented in GEICO's Complaint.

Presently, the Big Apple Defendants are currently prosecuting 774 individual AAA arbitrations against GEICO, claiming a total of more than $887,000.00. These arbitrations seek to collect on the very charges that are the subject of GEICO's declaratory judgment claim in the present case. See Asmus Decl. at ¶7.

## III.   **Big Apple's Present Business Activities**

Although Big Apple continues to conduct business by bringing and prosecuting arbitrations against GEICO for the collection of No-Fault claims, Big Apple no longer operates a business. Big Apple became authorized to conduct business in the State of New York by filing an application with the New York State Department of State on November 27, 2018. Thereafter, Big Apple started billing GEICO for healthcare goods provided to Insureds with January 4, 2019 as the first date of service. The New York State Department of State and the bills submitted to GEICO both identify 16102 Union Turnpike, Fresh Meadows, New York (the "Union Tpke location") as Big Apple's operating address. On March 12, 2019, Investigator Perdomo from GEICO's Special Investigations Unit visited the Union Tpke location and observed a red awning with the name "Big

Apple". There, Investigator Perdomo met Abayev, who invited her inside the Union Tpke location. See Vanunu Decl., Exhibit 1, Declaration of Danielle Perdomo ("Perdomo Decl.) at ¶¶ 4-5.

Big Apple billed GEICO for healthcare goods purportedly provided to Insureds from January until December 2019. Big Apple's last bill to GEICO was for healthcare goods purportedly provided on December 29, 2019. Thereafter, on November 17, 2020, Investigator Perdomo, once again, visited the Union Tpke location and observed that Big Apple no longer operated out of the Union Tpke location. The red awning listing "Big Apple" that Investigator Perdomo observed in March 2019 was replaced with an awning for a company Fresh Meadows Opthomology. See Perdomo Decl. at ¶¶ 6-8. The New York State Department of State and an internet search does not reveal a new address for Big Apple. See Perdomo Decl. at ¶ 9.

Furthermore, Big Apple does not have any real or personal property .See Perdomo Decl. at ¶ 10.

## ARGUMENT

### I.     The Court Should Grant GEICO's Request for an Order Staying All Pending Arbitrations Filed Against GEICO

As set forth below, a stay of the active arbitrations during the pendency of this action is time sensitive, necessary, and warranted, and will not prejudice the Big Apple Defendants.

#### A.     The Standard on a Motion for a Stay

In Allstate Ins. Co. v. Hisham Elzanaty, while determining whether to stay and enjoin the defendants' No-Fault insurance collection arbitrations pending the disposition of the plaintiff-insurer's fraud and declaratory judgment action, Judge Spatt noted the following standard for a preliminary injunction:

> "In order to justify a preliminary injunction, a movant must demonstrate (1) irreparable harm absent injunctive relief; and (2) 'either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor.'" Metro. Taxicab Bd. of Trade v. City

of New York, 615 F.3d 152, 156 (2d Cir. 2010) (quoting Almontaser v. N.Y. Dep't of Educ., 519 F.3d 505, 508 (2d Cir. 2008)).

929 F. Supp. 2d 199, 217 (E.D.N.Y. 2013).

District Courts within the Second Circuit have consistently applied this standard in determining whether to issue a stay of a defendant healthcare provider's No-Fault collections arbitration during the pendency of a plaintiff-insurer's fraud and declaratory judgment action. See, e.g., Gov't Emps. Ins. Co. v. Moshe, 2020 U.S. Dist. LEXIS 114100 (E.D.N.Y. June 29, 2020); Gov't Emps. Ins. Co. v. Strut, 2020 U.S. Dist. LEXIS 63396 (W.D.N.Y. April 10, 2020); Gov't Emps. Ins. Co. v. Wellmart RX, Inc., 2020 U.S. Dist. LEXIS 7864 (E.D.N.Y. January 16, 2020); Gov't Emps. Ins. Co. v. Cean, 2019 U.S. Dist. LEXIS 203298 (E.D.N.Y. November 22, 2019); State Farm Mut. Auto. Ins. Co. v. Parisien, 352 F. Supp. 3d 215 (E.D.N.Y. 2018); Mayzenberg, 2018 U.S. Dist. LEXIS 195890 ; Gov't Emps. Ins. Co. v. Strutsovskiy, 2017 U.S. Dist. LEXIS 178514 (W.D.N.Y. October 26, 2017); Liberty Mut. Ins. Co. v. Excel Imaging, P.C., 879 F. Supp. 2d 243 (E.D.N.Y. 2012) (all decisions staying and enjoining defendant healthcare providers' No-Fault collections arbitration during the pendency of plaintiff-insurers' fraud and declaratory judgment actions, based on application of identical preliminary injunction standard).

**B.   Absent the Requested Stay, GEICO Will Suffer Irreparable Harm**

The "showing of irreparable harm is [p]erhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." Elzanaty, 929 F. Supp. 2d. at 221 (quoting Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002)).

In Elzanaty – as in the present case – the plaintiff-insurers sued defendant healthcare providers seeking, among other things, a declaratory judgment to the effect that the healthcare providers were not entitled to collect on any of their pending No-Fault insurance billing. 929 F.

Supp. 2d. at 204-205. The defendant healthcare providers commenced arbitration on their pending

No-Fault insurance billing, and then moved to compel arbitration with respect to their pending

billing. Id. at 205-206. Judge Spatt granted the plaintiff-insurers' motion to stay and enjoin the

healthcare providers' No-Fault collection arbitrations pending the disposition of the insurers'

declaratory judgment claim. Id. at 217-222. In reaching his determination, Judge Spatt held that

the plaintiff-insurers had demonstrated the irreparable harm necessary to obtain a stay of and

injunction against the healthcare providers' No-Fault collection arbitrations, because:

> there is a concern here with wasting time and resources in an arbitration with awards that
> might eventually be, at best, inconsistent with this Court's ruling, and at worst, essentially
> ineffective. . . . It is sufficient to recognize the large realm of potential problems this may
> cause on the validity of those awards, especially in light of their multitude and internal
> inconsistency with each other. Thus, the Court agrees that allowing a large number of
> proceedings to be heard by a mix of arbitrators, each of whom will likely come to their
> own independent and potentially contradictory conclusions, will result in harm to Allstate
> from which it cannot recover.

Id. at 222.

Judge Spatt's decision in Elzanaty is not an outlier. Multiple judges within this district –

including decisions by this Court, Judge Block, Judge Glasser, and Judge Weinstein – have

similarly concluded, under circumstances analogous to this action, that a plaintiff-insurer will

suffer irreparable harm necessary to support a stay and injunction of pending No-Fault arbitrations

because the arbitrations may result in awards that are, at best, inconsistent with judicial rulings

and, at worst, essentially ineffective. See Mayzenberg 2018 U.S. Dist. LEXIS 195890 at * 14 - *

15 (Judge Glasser concluded that "allowing over 180 arbitrations to be heard by a mix of

arbitrators, each of whom will likely come to their own independent and contradictory conclusions

that may be rendered ineffective by this Court, will result in harm to GEICO from which it cannot

recover")(internal quotation omitted); Parisien, 352 F. Supp. 3d at 233 (Judge Glasser concluded

that "irreparable harm occurs where, as here, an insurer is required to waste time defending

numerous No-Fault actions when those same proceedings could be resolved globally in a single, pending declaratory judgment action")(citing <u>Strutsovskiy</u>, 2017 U.S. Dist. LEXIS 178514 (W.D.N.Y. Oct. 26, 2017)); <u>Moshe</u>, 2020 U.S. Dist. LEXIS 114100 at *3 (Judge Block stated that "[i]rreparable harm occurs where 'an insurer is required to waste time defending numerous no-fault actions when those same proceedings could be resolved globally in a single, pending declaratory judgment action.'")(quoting <u>Parisien</u>, 352 F. Supp. 3d at 233); <u>Cean</u>, 2019 U.S. Dist. LEXIS 203298 at *5 (this Court quoted <u>Parisien</u> and cited to <u>Mayzenberg</u>); <u>Excel Imaging</u>, 879 F. Supp. 2d at 264 (Judge Weinstein stated that "[p]ermitting these individual claims to proceed to arbitration while [the plaintiff-insurer's] claim for a declaratory judgment remains pending in this court puts the plaintiffs at significant risk of multiple judgments that may be inconsistent with the ultimate decision in this case"); <u>see also Strutsovskiy</u>, 2017 U.S. Dist. LEXIS 178514  at * 18 ("multiple federal and state courts have concluded that wasting time and resources in arbitrations that might result in awards inconsistent with future judicial rulings constitutes irreparable harm sufficient to stay arbitration").

It is significant to note that "several New York state courts have stayed no-fault insurance arbitrations under similar circumstances." <u>Strutsovskiy</u>, 2017 U.S. Dist. LEXIS 178514 at * 20; <u>see also</u> <u>Elzanaty</u>, 929 F. Supp. 2d at 221 (noting that "a large number of New York State courts have stayed arbitrations under precisely the same facts as in the present case" and collecting cases). Similar to the reasoning provided in the above-referenced federal court cases, decisions from the New York state court held that the potential inconsistencies amongst the prospective arbitral awards themselves, and between the arbitral awards and the outcome of the insurers' declaratory judgment claims, satisfied the irreparable injury requirement. <u>See</u>, <u>e.g.</u>, <u>GEICO Ins. Co. v Williams</u>, 2011 N.Y. Misc. LEXIS 305 at * 7 (Sup. Ct. Nassau Cty. February 1, 2011)("[L]itigating

13

each alleged fraudulent claim separately would create an undue burden for the Plaintiffs and could result in significantly varying outcomes. As such, the Plaintiffs clearly established that irreparable harm would be suffered if the stay is not granted."); St. Paul Travelers Ins. Co. v. Nandi, 2007 N.Y. Misc. LEXIS 4417 at * 22 (Sup. Ct. Queens Cty. May 25, 2007) ("[I]n view of the multiplicity of lawsuits and the possible inconsistent outcomes in the absence of an injunction, plaintiff has established the elements of irreparable injury and the balancing of the equities in its favor.").

The risk of inconsistent judgments is underscored by the fact that – in contrast to the present case – GEICO does not have a full and fair opportunity to litigate the legitimacy of the Big Apple Defendants' billing for DME in the expedited arbitration system set forth in the New York No-Fault insurance law. Indeed, the expedited No-Fault arbitration procedure set forth in 11 N.Y.C.R.R. § 65-4.1 is intended to work as quickly as possible, does not provide any substantive discovery in advance of the hearing, and does not generally permit any meaningful examination or cross-examination of witnesses. See Mun, 751 F.3d at 99 ("New York's arbitration process for No-Fault coverage is an expedited, simplified affair meant to work as quickly and efficiently as possible. . . . Discovery is limited or non-existent. . . . Complex fraud and RICO claims, maturing years after the initial claimants were fully reimbursed, cannot be shoehorned into this system."); Mayzenberg, 2018 U.S. Dist. LEXIS 195890 at *16-17; Strutsovskiy, 2017 U.S. Dist. LEXIS 178514 at *7; see also Asmus Decl., ¶¶ 4-17.

There is no material distinction between the cases cited above and the instant case. Here, as in the cases cited above, a plaintiff-insurer asserts various racketeering and other fraud-based claims against defendant healthcare providers and seeks a declaratory judgment to the effect that a healthcare provider should be prohibited from collecting No-Fault benefits based on its

fraudulent activity and other unlawful conduct. As in the cases cited above, the Big Apple Defendants have commenced a massive amount of separate arbitrations aimed at recovering the same No-Fault Benefits that are the subject of the GEICO's declaratory judgment claim. Additionally, as in the cases cited above, the likely inconsistencies amongst the prospective arbitral rulings themselves, and between the prospective arbitral rulings and this Court's ultimate disposition of the declaratory judgment and fraud-based claims, threaten GEICO with irreparable harm absent the requested injunctive relief.

Moreover, here, GEICO will suffer irreparable harm because a money damage award or judgment is unlikely to provide adequate compensation to GEICO. The Second Circuit has repeatedly held that "[t]he 'unlikelihood that defendants . . . would, in any event, be able to satisfy a substantial damage award' further supports a finding of irreparable harm." WPIX, Inc. v. ivi, Inc., 691 F.3d 275, 286 (2d Cir. 2012), citing Omega Importing Corp. v. Petri-Kine Camera Co., 451 F.2d 1190, 1195 (2d Cir. 1971).

Presently, Big Apple does not conduct business. Big Apple stopped billing GEICO in December 2019 and no longer operates at the Union Tpke location on file with the New York State Department of State and listed as the business address on the health insurance claim forms submitted to GEICO. See Perdomo Decl., at ¶¶ 7-9. Also, an asset search revealed that Big Apple does not have any real or personal property that could be used to collect on a money damage award or judgment. Perdomo Decl., at ¶¶ 10. As such, besides any amount sitting in a bank account, Big Apple's only assets are its accounts receivable, which includes the claims that are the subject of the pending collections proceedings. Without staying the pending collections proceedings, it will be extremely unlikely that GEICO will be able to satisfy a money damage award or judgment because Big Apple's only assets include the accounts receivable. See Wellmart RX, 435 F.Supp.3d

at 453 (finding that GEICO will suffer irreparable harm absent a stay of pending arbitrations because – in addition to potential inconsistent judgments and unnecessary expenditure of time and resources – GEICO may be unable to recover any dollar award if GEICO prevails in the case).

Accordingly, GEICO will suffer irreparable harm absent a stay of Big Apple's pending arbitrations

### C.     GEICO Has Shown – at a Minimum – a Serious Question Going to the Merits of its Declaratory Judgment Claim

The detailed allegations in GEICO's Complaint leave no doubt that GEICO has shown, at the least, sufficiently serious questions going to the merits of GEICO's declaratory judgment claim to make them a fair ground for litigation – if not establish a likelihood of success on the merits. GEICO's Complaint sets forth considerable evidence that the Big Apple Defendants were not entitled to collect on the bills for DME submitted to GEICO, and all of the medical-related allegations in the Complaint have been confirmed by a medical expert. See Dr. Borzone Decl., passim.

It is worthwhile to note the standards that courts have applied – in this exact context – in determining whether a plaintiff-insurer has made a showing warranting a stay. In Parisien, Judge Glasser stated the "[l]ikelihood of success is not the focus at the early stages of a case such as this, because any likelihood of success inquiry would be premature. Instead, the Court looks to whether there is a serious question going to the merits to make them a fair ground for trial." 352 F. Supp. 3d at 234 (quoting Elzanaty, 929 F. Supp. 2d at 217). This standard has been applied in numerous cases under substantially-identical circumstances.

In Elzanaty, Judge Spatt found that the plaintiff-insurers demonstrated sufficiently serious questions going to the merits where they "detailed a complicated scheme of alleged fraudulent activity" in their complaint. 929 F. Supp. 2d at 222. In Strutsovskiy, Judge Vilardo found that

GEICO raised sufficiently serious questions going to the merits after the court "conducted its own review of the facts GEICO alleged" and determined that "GEICO's allegations raise at least a serious question about a scheme of fraudulent activity." 2017 U.S. Dist. LEXIS 178514 at * 22. In Parisien, Judge Glasser found that State Farm raised sufficiently serious questions going to the merits where it had "adequately detailed a complicated scheme of alleged fraud activity" and it could not be said that the request for injunctive relief "rest[s] on mere hypotheticals". 352 F. Supp. 3d at 234.

Recently, in Moshe, Judge Block granted GEICO's motion to stay the defendants' pending arbitrations based solely upon the facts set forth in GEICO's complaint. 2020 U.S. Dist. LEXIS 114100. He reasoned that "a complaint alone can be sufficient to grant an injunction. This is particularly true where, as here, the complaint comprehensively details regulatory violations, unnecessary medical services, and unlawful referrals." Id. at *5. Based on a similar factual record of only the allegations in a complaint, in Gov't Emps. Ins. Co. v. Axial Chiro, Judge Gold issued a Report and Recommendation to grant the plaintiffs' motion to stay the defendants' pending arbitrations and found:

> while a "fact-laden discovery process" may help demonstrate a likelihood of success, it is not essential to a showing that a case presents a serious question going to the merits. . . . plaintiffs' Complaint is hardly conclusory; to the contrary, in their Complaint, plaintiffs extensively set forth specific facts that "adequately detail[] a complicated scheme of fraudulent activity" . . . [that] raised serious questions going to the merits of their claims.

Case No. 1:19-cv-05570-ENV-SMG, Docket No. 56, p. 17 (E.D.N.Y. April 27, 2020).

Similarly, in the present case, GEICO's Complaint comprehensively details the Big Apple Defendants' scheme of alleged fraudulent activity, raising "at least a serious question about a scheme of fraudulent activity" that does not by any reasonable metric "rest on mere hypotheticals". Even more, the allegations in the Complaint regarding the predetermined fraudulent protocols that

were used to submit charges to GEICO for medical unnecessity DME are confirmed by Dr. Borzone's review of claim files. See Dr. Borzone Decl., passim.

### 1.    Prescriptions Pursuant to Predetermined Fraudulent Protocols

GEICO's Complaint provides granular detail demonstrating that the prescriptions for DME were based upon predetermined fraudulent protocols, not medical necessity. GEICO's Complaint explains how the Co-Defendants issued prescriptions in the Insureds' names that were provided to Big Apple. In fact, the DME billed by Big Apple were not medically necessary because the DME was virtually always prescribed: (i) regardless of the circumstances of each individual Insureds' automotive accident; (ii) regardless of the severity of each Insured's injuries and symptoms; (iii) without the Co-Defendants' examination reports explaining why the DME was medically necessary; and (iv) while the Insureds were directed to undergo treatments contrary to the medical purpose for the DME, such as issuing physical therapy to bend and stretch parts of the body while issuing orthotic devices to restrict those same parts. Even more, most of the Insureds who were purportedly provided with DME from Big Apple were issued identical prescriptions for a custom-fitted lumbo-sacral orthosis and a cervical traction unit the same exact item. See Docket No. 1, ¶¶ 91-118; see also Dr. Borzone Decl. ¶ 6.

The Complaint sets forth facts to show that the prescribed DME were not just medically unnecessary, but also based upon predetermined fraudulent protocols. For example: (i) the prescriptions were issued directly to the Big Apple Defendants, without any involvement by the Insureds; (ii) some of the prescriptions were issued by healthcare providers – including Defendants Paulus, Kiaei, and Margulies – when the healthcare providers did not even identify the DME prescribed in their examination reports; and (iii) many of the prescriptions issued by healthcare providers – including Defendants Paulus, Kiaei, and Margulies – were issued on days that the prescribing healthcare provider did not even treat the Insured. See Docket No. 1, ¶¶ 119-211; Dr.

Borzone Decl. ¶¶ 9 – 17. Additionally, the Complaint specifically identifies the predetermined and virtually identical prescriptions for DME that were provided to virtually every Insured by each of the Co-Defendants and provides specific examples of Insureds who were prescribed DME consistent with the predetermined pattern by each Co-Defendant. See Docket No. 1, ¶¶ 119-135 (the specific predetermined fraudulent protocols by Mostovoy and claim-specific examples); ¶¶ 136-159 (the specific predetermined fraudulent protocols by Paulus and claim-specific examples); ¶¶ 160-183 (the specific predetermined fraudulent protocols by Kiaei and claim-specific examples); ¶¶ 184-211 (the specific predetermined fraudulent protocols by Margulies and claim-specific examples); see also Dr. Borzone Decl., passim.

In this context, it is worthwhile to emphasize that the nature of the predetermined fraudulent protocols to provide virtually identical DME to all Insureds would not be readily evident upon the review of a single bill in a single arbitration. However, an aggregated review of the hundreds of bills and prescriptions for DME by each Co-Defendant reveals a systematic pattern in which virtually every Insured received virtually identical prescriptions for DME. Against this backdrop, GEICO respectfully submits that there is – at a minimum – a serious question going to the merits of its claims that the prescriptions for DME were not medically necessary and were provided pursuant to predetermined fraudulent protocols, and thus the Big Apple Defendants were ineligible for reimbursement of No-Fault Benefits based upon those prescriptions.

### 2.    The Payment of Illegal Kickbacks

In addition to obtaining prescriptions for DME based on predetermined fraudulent protocols, not medical necessity, GEICO's Complaint sets forth considerable evidence that the Big Apple Defendants' obtained prescriptions as a result of paying illegal kickbacks. See Docket No. 1, ¶¶ 66-90.

In order to obtain prescriptions for DME from various healthcare providers, including the Co-Defendants, the Big Apple Defendants paid moneys to entities that served no legitimate purpose. As detailed in the Complaint:

(i)      On May 24, 2019, the Big Apple Defendants paid Statewide Employment Professionals, Inc. a check for $10,675.23, when Abayev is Big Apple's sole employee. See Docket 1, ¶¶ 69-70.

(ii)      On May 28, 2019, the Big Apple Defendants paid Prompt Process Serving & Investigation Inc. a check for $9,632.38, when Prompt Process Serving & Investigation is not a licensed process serving agency. See Docket 1, ¶ 71.

(iii)      Between May 7 and July 2, 2019, the Big Apple Defendants paid almost $50,000.00 to Med Supply Professionals, Inc. See Docket 1, ¶¶ 72-73.

(iv)      Between May 2 and July 8, 2019, the Big Apple Defendants paid more than $63,000.00 to NY & EU Supply, Inc., when NY & EU Supply is not a licensed DME supplier. See Docket No. 1, ¶¶ 74-75.

Under New York law, the Big Apple Defendants' payment of funds in order to obtain prescriptions for DME made them ineligible to collect No-Fault Benefits. See N.Y. Educ. Law § 6509-a, 6530(17); 8 N.Y.C.R.R. § 29.1(b)(2); see also Mayzenberg, 2018 U.S. Dist. LEXIS 195890 at *7. Against this backdrop, Plaintiffs have shown that there are, at the least, serious questions as to the merits of GEICO's claims that the Big Apple Defendants paid illegal kickbacks in order to obtain prescriptions for DME.

### 3.      The Billing for DME Not Provided

The Big Apple Defendants' fraudulent schemes included billing GEICO for DME that they never provided to Insureds because they either provided a different – and cheaper – product than what was billed to GEICO or never provided a product in the first-instance.

The Complaint provides five specific examples where GEICO learned, as a result of an interview with a GEICO investigator, that the Insureds either never received or received only one of the two items billed by the Big Apple Defendants. See Docket No. 1, ¶¶ 216-224.

In addition, the Big Apple Defendants billed GEICO for specific DME that they never provided to the Insureds when – to the extent they provided any items – they provided lesser alternatives that qualify under different HCPCS Codes with significantly lower reimbursement rates. The Complaint provides the following examples:

(i)     The Big Apple Defendants billed GEICO for a specific lumbar brace using HCPCS Code L0637, which requires that each brace be "custom-fitted" by an appropriately certified or licensed person to provide an individualized fit, not a self-adjustment. To the extent that any lumbar braces were provided, the braces were not custom-fitted, which is evidenced by the fact that Abayev, the sole employee of Big Apple, is not a licensed healthcare provider and not certified to custom-fit DME.

(ii)    The Big Apple Defendants billed GEICO for a specific knee brace using HCPCS Code L1832, which requires that each brace be "custom-fitted" by an appropriately certified or licensed person to provide an individualized fit, not a self-adjustment. To the extent that any knee braces were provided, the braces were not custom-fitted, which is evidenced by the fact that Abayev, the sole employee of Big Apple, is not a licensed healthcare provider and not certified to custom-fit DME.

See Docket No. 1, ¶¶ 225-256.

Against this backdrop, Plaintiffs have shown that there are, at the least, serious questions as to the merits of GEICO's claims that the Big Apple Defendants submitted charges in the bills to GEICO for DME never provided to the Insureds.

## D.     The Balance of Hardships Tips in Favor of a Stay

The Big Apple Defendants will not suffer any hardship if their right to collect on their pending billing is adjudicated in a single, efficient declaratory judgment action, rather than on a piecemeal basis in multitudinous arbitral proceedings with the prospect of significantly varying outcomes.  See, e.g., Elzanaty, 929 F. Supp. 2d at 222 ("[T]he issuance of a preliminary injunction will not unduly cause hardship to any of the defendants, but, to the contrary, all parties will benefit from having the issue of fraudulent incorporation determined in one action.") (Internal quotations and citation omitted); Autoone Ins. Co. v. Manhattan Heights Med., P.C., 2009 N.Y. Misc. LEXIS 2003 at * 7 (Sup. Ct. Queens Cty. July 31, 2009) (same).

Under analogous circumstances, numerous courts have concluded that the balance of hardships tip in the plaintiff-insurer's favor, considering that it would be most efficient to have the question of a defendant healthcare provider's entitlement to No-Fault Benefits resolved in a single action rather than in a multitude of individual arbitrations, and a defendant healthcare provider would be entitled to a high rate of statutory interest on their claims if they prevailed. See, e.g., Moshe, 2020 U.S. Dist. LEXIS 114100 at *7-8 (finding that the balance of hardships favor GEICO as GEICO will face thousands of different proceedings absent and injunction and defendants entitlement to statutory interest if they prevail); Mayzenberg 2018 U.S. Dist. LEXIS 195890 at * 22-23 (holding the defendant healthcare provider would suffer no real injury if its collections arbitrations were stayed, considering that "it is obviously more efficient and beneficial for Defendants if all of their claims are resolved in one action, rather than in hundreds of different proceedings. What is more, if Defendants prevail in this action, they are entitled to statutory interest on their unpaid claims"); Parisien, 352 F. Supp. 3d at 234-235 (finding the balance of hardships tipped in favor of injunctive relief where "[i]f the preliminary injunction is granted and State Farm fails to prove its claims, then, at worst, Defendants' recovery of the no-fault benefits to which they are entitled will be delayed"); Wellmart RX, 2020 U.S. Dist. LEXIS 7864; Axial Chiro, Docket No. 56, pp. 18-19. Cean, 2019 U.S. Dist. LEXIS 203298; Strutsovskiy, 2017 U.S. Dist. LEXIS 178514; Elzanaty, 929 F. Supp. 2d at 222; see also 11 N.Y.C.R.R. § 65-3.9(a) (setting forth the interest rate for all overdue mandatory and additional personal injury protection benefits due an applicant or assignee).

Accordingly, here, the balance of hardships tips decidedly in favor of a stay as requested by Plaintiffs.

II. **The Court Should Enjoin Big Apple from Commencing any New No-Fault Collections Proceedings During the Pendency of this Action**

The Court should grant Plaintiffs' motion to enjoin Big Apple from commencing any new No-Fault collections litigation or arbitration against Plaintiffs during the pendency of this action.

Plaintiffs commenced the present action on November 30, 2020. See Docket No. 1. Pursuant to the plain language of Fed. R. Civ. P. 13(a), any claims seeking payment for goods allegedly provided by Big Apple to GEICO's Insureds that were not pending on November 30, 2020, is a compulsory counterclaim in the present action. Thus, this Court can and should enjoin Big Apple from filing any new lawsuits and/or arbitrations. Rule 13(a) states:

> Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action...

See also Jones v. Ford Motor Credit Co., 358 F.3d 205, 210-13 (2d Cir. 2004) (distinguishing between compulsory counterclaims and permissive counterclaims); Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc., 233 F.3d 697, 704 (2d Cir. 2000) (dismissing plaintiff's complaint on the ground that its claims were barred under Fed. R. Civ. P. 13(a)). Rule 13(a) was "designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." Southern Constr. Co., Inc. v. Pickard, 371 U.S. 57, 60 (1962). Clearly, the issues in any No-Fault collection action to recover on bills for DME provided by Big Apple arise out of the same series of transactions that are the subject of this action as they involve the identical claims raised by Plaintiffs' declaratory judgment claim in this case.

Courts have power to enjoin parties from prosecuting as separate actions claims that should be brought as compulsory counterclaims. See Computer Assocs. Int'l, Inc. v. Altai, Inc., 893 F.2d 26, 29 (2d Cir. 1990); Asset Allocation & Mgmt. Co. v. W. Employers Ins. Co., 892 F.2d 566, 572

(7th Cir. 1989); Nat'l Equip. Rental, Ltd. v. Fowler, 287 F.2d 43, 45 (2d Cir. 1961). On this basis alone, enjoining post November 30, 2020, filings against GEICO by Big Apple, other than as a counterclaim in this action, is appropriate.

Moreover, Courts in this District – under nearly identical circumstances – have enjoined healthcare providers from commencing additional collection arbitrations or litigations pending the disposition of a claim for a declaratory judgment. See, e.g., Mayzenberg, 2018 U.S. Dist. LEXIS 195890 at *29 ("This Court will have all claims and defenses before it necessary to rule on GEICO's declaratory judgment action and Defendants' claims that they are in fact eligible to receive No-Fault Benefits. It is in the interests of judicial economy to resolve the controversy in a single action, rather than require the parties and the lower courts to engage in piecemeal and repetitive litigation").

Accordingly, a stay enjoining Big Apple from commencing any new No-Fault collections arbitrations or litigations during the pendency of this action is fully warranted.

## III.   GEICO Should Not be Required to Post Security for the Requested Injunction

This Court has discretion to waive the security requirement of Fed. R. Civ. P. 65(c), especially where – as here – a movant has not demonstrated any proof of likelihood of actual harm. See, e.g., Donohue v. Mangano, 886 F. Supp. 2d 126, 163 (E.D.N.Y. 2012).

As discussed above, the requested injunction will not cause the Big Apple Defendants any prejudice at all, inasmuch as – in the unlikely event that the Big Apple Defendants ultimately prevail in this case – they will be entitled to collect a high rate of statutory interest on their outstanding No-Fault claims. Accordingly, GEICO respectfully submits that it should not be required to post security for the requested injunction. See, e.g., Moshe, 2020 U.S. Dist. LEXIS 114100 at *8 (waiving bond when granting injunction  because "GEICO undoubtedly has the ability to pay if defendants prevail. As such, defendants will suffer no farm from the inunction and

the bond requirement is waived"); <u>Mayzenberg</u>, 2018 U.S. Dist. LEXIS 195890 at * 30-31

(granting injunction without requiring security based on these considerations); <u>Wellmart RX</u>, 2020

U.S. Dist. LEXIS 7864 at *28-29 (citing to <u>Mayzenberg</u> granting injunction and waiving bond

requirement); <u>Axial Chiro</u>, Docket No. 56, pp. 19-20; <u>Strutsovskiy</u>, 2017 U.S. Dist. LEXIS 178514

at * 23; <u>Elzanaty</u>, 929 F. Supp. 2d at 222.

## **CONCLUSION**

For the reasons stated herein, GEICO's motion should be granted in its entirety, together

with such other and further relief as to the Court may seem just and proper.

Dated: Uniondale, New York
       February 17, 2021

Respectfully submitted,

RIVKIN RADLER LLP

By: _/s/ Michael Vanunu_
       Barry I. Levy, Esq.
       Michael A. Sirignano, Esq.
       Michael Vanunu, Esq.
       Philip Nash, Esq.
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

*Counsel for Plaintiffs, Government Employees*
*Insurance Company, GEICO Indemnity Company,*
*GEICO General Insurance Company, and GEICO*
*Casualty Company*