# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO INDEMNITY COMPANY, GEICO GENERAL INSURANCE COMPANY and GEICO CASUALTY COMPANY,

    Docket No.: 1:20-cv-05786-PKC-SJB

Plaintiffs,

-against-

BIG APPLE MED EQUIPMENT, INC., DAVID ABAYEV, ALEKSANDR MOSTOVOY, D.C., SURESH PAULUS, D.O., ASHLEY KIAEI, D.C., PETER MARGULIES, D.C., and JOHN DOE DEFENDANTS 1-10,

Defendants.
-------------------------------------------------------------------X

## DECLARATION OF KATHLEEN ASMUS

Kathleen Asmus, hereby declares the truth of the following pursuant to 28 U.S.C. § 1746:

1.     I am employed by Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "GEICO") as a Claims Manager.

2.     I have personal knowledge of the facts set forth in this declaration and would testify as to them in a Court of law if called upon to do so.

3.     I respectfully submit this declaration in support of GEICO's motion for an order, pursuant to Fed. R. Civ. P. 65 and the Court's inherent power:

    (i)     staying all pending No-Fault insurance collection arbitrations that have been commenced against GEICO by or on behalf of Big Apple Med Equipment, Inc. ("Big Apple") pending disposition of GEICO's declaratory judgment claim in this action; and

    (ii)     enjoining Big Apple and anyone acting on their behalf from commencing any further No-Fault insurance collection arbitration or litigation against GEICO pending disposition of GEICO's declaratory judgment claim in this action.

In this context, it is essential to note that:

(i) In its Complaint in this action, GEICO very plausibly alleges – among other things – that Big Apple continues to submit a massive amount of fraudulent no-fault insurance bills to GEICO; and

(ii) Defendants Big Apple and David Abayev ("Abayev", collectively the "Big Apple Defendants") – through Big Apple – continue to actively attempt collection on their pending fraudulent billing through no-fault collections arbitrations, despite the pendency of the present lawsuit, which seeks – among other things – a declaratory judgment to the effect that Big Apple may not collect on its pending fraudulent billing.

I. **Big Apple's Pending No-Fault Collection Actions**

4. A stay of pending no-fault arbitrations filed by or on behalf of the Defendants is necessary in light of both the risk of multiple inconsistent judgments and the inability of insurers – such as GEICO – to present complex fraud claims and defenses in the context of New York's expedited no-fault arbitration system.

5. From inception, the Big Apple Defendants have submitted bills to GEICO seeking reimbursement of more than $1.6 million in no-fault benefits for durable medical equipment and orthotic devices ("DME") purportedly provided to New York automobile accident victims covered by policies of insurance issued by GEICO ("Insureds").

6. Almost all of the charges billed to GEICO relate to two specific items of DME purportedly provided to GEICO's Insureds. The Big Apple Defendants submitted charges for purportedly providing more than 1,100 patients with a lumbo-sacral orthotic device, using billing code "L0637", which totaled more than $970,000.00. Similarly, the Big Apple Defendants submitted charges for purportedly providing more than 1,100 patients with cervical traction equipment, using billing code E0855, which totaled more than $560,000.00.

7. Presently, more than half of the total charges submitted by the Big Apple Defendants to GEICO are being prosecuted through the AAA. Specifically, Big Apple is currently

2

prosecuting 774 collection arbitrations against GEICO, seeking to collectively recover more than $887,000.00. Each of the charges identified in the pending arbitrations are the subject of GEICO's declaratory judgment claim in the present case.

## II.     New York No-Fault Insurance Arbitration System

8.      As discussed below, in contrast to the present action, New York's no-fault arbitration system does not provide GEICO with a full and fair opportunity to litigate the legitimacy of the DME purportedly provided by Big Apple and Big Apple's billing practices.

9.      Accordingly, a brief substantive discussion of the pertinent procedures that apply in the context of no-fault collections arbitrations is warranted.

10.     To the extent that an insurer such as GEICO denies a healthcare provider's no-fault insurance claim, the healthcare provider may bring an action against the insurer or compel the insurer to arbitrate the claim. See N.Y. Ins. Law § 5106.

11.     The arbitration process is commenced by the submission of the insurer's denial of claim form, as well as the prescribed form (known as the "AR-1") setting forth the reasons why the healthcare provider is contesting the denial and a listing of the amounts in dispute. See 11 N.Y.C.R.R. § 65-4.2(b)(1).

12.     The matter then is assigned to a "conciliator" who is responsible for making attempts to resolve the matter as an intermediary between the healthcare provider and the insurer. If the dispute between the healthcare provider and the insurer cannot be resolved within 60 days from the initiation of the conciliation process, the matter is then transferred by the conciliator to arbitration in order to have the dispute resolved by an arbitrator assigned by the designated organization. See 11 N.Y.C.R.R. §§ 65-4.2(b)(2)(iv), 65-4.5(a), and 65-4.5(f).

13. Pursuant to 11 NYCRR § 65-4.2(a)(2), the New York Department of Financial Services Superintendent has designated the American Arbitration Association ("AAA") as the body that is responsible for the administration of the no-fault arbitration process. Under that regulation and pursuant to the Superintendent's designation, AAA is authorized on behalf of the Superintendent, to receive, attempt to conciliate and forward to arbitration all requests for arbitration that it cannot conciliate.

14. With the exception of a nominal filing fee paid by the healthcare provider/claimant, all of the costs associated with the conciliation and arbitration process before AAA are borne by the insurers in relation to the number of matters that are filed against them by claimants in a given year. For example, 11 N.Y.C.R.R. §65-4.2(c)(1) states as follows:

> The cost of administering the conciliation function, reduced by any fees collected, shall be paid annually by insurers (including self- insurers and MVAIC) to the designated organization upon receipt of a statement therefrom. This cost shall be distributed among insurers in an equitable manner approved by the Superintendent of Financial Services. This distribution shall, to the extent practicable, be a function of the degree to which an insurer is named as a respondent in conciliation proceedings of the designated organization.

15. Under this regulatory scheme, GEICO is required to pay AAA a mandatory non-refundable fee in every individual case where it is named as a respondent by a healthcare provider seeking payment on a claim for no-fault benefits that GEICO has denied. Thus, when a healthcare provider files an AR-1 demand for arbitration with AAA, this automatically triggers a series of fees that are assessed against GEICO with respect to that case regardless of the size of the claim, whether the case is meritorious, or whether the applicant ultimately withdraws the claim at any stage during the process.

16. The level of mandatory nonrefundable fees assessed against GEICO increases exponentially as each matter proceeds from conciliation through to arbitration. The average

4

mandatory fees that have been assessed against GEICO for each matter submitted by a healthcare provider to AAA from 2008 through present have been and remain several hundred dollars for each arbitration commenced against GEICO.

17. The process is driven solely by the healthcare providers because they are not required to accept offers of settlement at the conciliation stage of the proceedings or to withdraw non-meritorious claims. In fact, healthcare providers routinely withdraw claims without prejudice after matters are moved to arbitration, but prior to or at the actual hearings, to avoid adverse determinations. Because of the manner in which the arbitration process operates, counsel for the healthcare providers routinely seek to leverage the costs that are incurred by the insurers associated with the proceedings as a means to collect benefits to which they are not entitled.

18. Furthermore, when an arbitration hearing occurs, the expedited no-fault arbitration procedure set forth in 11 N.Y.C.R.R. § 65-4.1 generally contemplates no substantive discovery in advance of the hearing, nor does it generally permit any meaningful examination or cross-examination of witnesses.

19. What is more, to the limited extent that any discovery is permitted in advance of the hearing, insurers such as GEICO generally are not permitted to seek or obtain pre-hearing discovery that could be used to demonstrate a pattern of medically-unnecessary, illusory, or unlawful goods occurring across large numbers of patients and claims. Rather hearing – to the limited extent that they allow any discovery at all – no-fault arbitrators generally refuse to permit any discovery with respect to <u>patterns</u> of treatment practices beyond the discrete claim or claims before them in a given hearing.

20. In fact, no-fault arbitrations typically are heard and resolved in a matter of minutes, with arbitrators conducting one hearing after another, generally in 15-minute intervals over the course of a day.

These circumstances render it impractical for an arbitrator to adequately consider a <u>pattern</u> of fraudulent prescribing of goods and/or fraudulent billing, or even the need for discovery.

I declare the truth of the following subject to the penalties of perjury. Executed at Woodbury, New York on February 11, 2021.

_____
Kathleen Asmus